## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| CAROLINA FLUID HANDLING | ) |
| INTERMEDIATE HOLDING CORP., | ) Case No. 09-10384 (CSS) |
| a Delaware Corporation, et al., (f/k/a | )(Jointly Administered) |
| Fluid Routing Solutions Intermediate | ) |
| Holding Corp.), | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |
| ALFRED T. GUILIANO, Chapter 7 Trustee | ) |
| Of Carolina Fluid Handling Intermediate | ) |
| Holding Corp. (f/k/a Fluid Routing Solutions | ) |
| Intermediate Holding Corp.) | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Pro. No. 11-50393 (CSS) |
| | ) |
| ALMOND INVESTMENT COMPANY | ) |
| d/b/a ALMOND CORPORATION, a | ) |
| Michigan corporation, | ) |
| | ) |
| Defendant. | ) |

### OPINION[1]

BARNES & THORNBURG LLP
David M. Powlen
1000 North West Street
Suite 1200
Wilmington, DE  19801
          -and-
John T. Gregg

PACHULSKI STANG ZIEHL
& JONES LLP
Laura Davis Jones
Andrew W. Caine
Bradford J. Sandler
Jeffrey Nolan
Peter J. Keane

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

171 Monroe Avenue, NW, Suite 1000        919 North Market Street, 17th  Floor
Grand Rapids, MI  49503                  Wilmington, DE  19801

Counsel for Defendant                    Special Counsel for Alfred
Almond Products, Inc.                    T. Giuliano, Chapter & Trustee

Dated:  March 14, 2012

Sontchi, J._____

This adversary proceeding was commenced by the chapter 7 trustee against Almond Products, Inc. ("Almond") seeking recovery as preferences of payments made by the Debtors.  Almond filed a motion for summary judgment asserting that the payments are not avoidable because they were made under an executory supply agreement between Almond and the Debtors that was assumed and assigned by the Debtors under a sale order approved by the Court.  The Court finds that there is no material fact as to whether the supply agreement was an executory contract assumed and assigned by the Debtors.  As such the preferential payments cannot be recovered by the trustee as had the preferential payments not been paid or if they were recovered by the trustee they would have to be paid (as an administrative claim) in connection with the assumption and assignment of the supply agreements.  As such, the Court grants Almond's motion for summary judgment.  The Court further denies the Trustee's related request for discovery.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Court has the judicial power to issue a final order.

## STATEMENT OF FACTS

Prior to the Petition Date, Fluid Routing Solutions, Inc. (together with its affiliate debtors, the "Debtors") and Almond entered into a supply agreement ("Supply Agreement") whereby Almond agreed to supply the Debtors with certain goods and services related to the Debtors' fuel systems business.

On February 6, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  As of the Petition Date, the Debtors owed Almond $518,786.  On the Petition Date, the Debtors filed a motion seeking approval of, among other things, (i) bid procedures, (ii) procedures regarding the assumption and assignment of executory contracts, including cure amounts, (iii) sale procedures, and (iv) other related relief regarding the sale of the Debtors' fuel systems business (the "Sale Motion").  The Sale Motion proposed the sale of the Debtors' fuel systems business to the stalking horse bidder, FRS Holding Corp. (the "Purchaser").

On February 27, 2009, the Debtors filed a Notice of Filing Schedules to Asset Purchase Agreement ("Disclosure Schedule Notice").  The Disclosure Schedule Notice attached schedules, including: (a) a (proposed) list of executory contracts to be

assumed, (b) a (proposed) list of trade payables to be assumed by the Purchaser, and (c) a (proposed) list of excluded assets and contracts.  The Supply Agreement was listed as an excluded asset/contract. [2]

Shortly thereafter, and as authorized by an order of the Court,[3] the Debtors requested that Almond enter into a "Trade Agreement," whereby the Debtors would provide a critical vendor payment of unpaid pre-petition claims to Almond and, in turn, Almond would relinquish certain rights and agree to continue to supply goods and services to the Debtors.  Almond declined to accept the proposed "Trade Agreement" and was not treated as a critical vendor by the Debtors.  However, the parties began to negotiate the assumption and assignment of the Supply Agreement to the Purchaser, as well as the cure amount that would be due on assumption.

In accordance with the order approving bid procedures ("Bid Procedures Order"),[4] the Debtors filed the *Notice of Debtors' Intent to Assume and Assign Certain Leases and Executory Contracts and Fixing of Cure Amounts* (the "Cure Notice").[5]  The Supply Agreement was not listed in the Cure Notice.  Thereafter, on March 19, 2009, the

---

[2]  D.I. 136 (Schedule 2.3(e) Excluded Assets and Contracts).  The Excluded Contracts list the "Supply Agreement, dated April 2, 2008, between Almond Products, Inc. and Fluid Routing Solutions, Inc."  Almond indicates that the Disclosure Schedules Notice is internally inconsistent because although the Supply Agreement is listed as an Excluded Contract, the schedules also list Almond as an Assumed Trade Payable.  *See* Schedule 2.2(a)(ii) Assumed Trade Payables.  However, the Assumed Trade Payables schedule lists "Almond Corporation" *not* Almond Products, Inc.  This may be a fact in dispute; however, *even if* the Court assumes *arguendo* that Almond Corporation and Almond Products, Inc. are two different and distinct companies, the analysis herein will not be affected.

[3]  D.I. 20 (*Order Pursuant to Sections 105, 362 and 506(b) of the Bankruptcy Code Authorizing the Debtors to Elevate Certain Prepetition Claims of Critical Vendors to Administrative Priority*).

[4]  D.I. 85.

[5]  D.I. 154.

Debtors and Almond executed a *First Amendment to Supply Agreement* (the "Amendment to Supply Agreement").  The Amendment to Supply Agreement established the amount of Almond's cure claim ($367,385.57) and provides, among other things, that:

> [The Debtors] shall use its best efforts to obtain Bankruptcy Court approval of the assumption and assignment of the Supply Agreement (which includes the Amendment to Supply Agreement) to the [Purchaser] . . . .
>
> The Debtors shall . . . amend their Schedule of Assumed Executory Contracts filed in conjunction with the sale of their fuel systems business to reflect the Assumption and Assignment, including cure obligations. . . .
>
> [A] cure payment shall be made to Almond by the Purchaser . . . in the aggregate amount of $367,385.57 . . . .
>
> The Product pricing set forth in the Supply Agreement shall be reduced by two percent (2%) effective immediately upon the entry of an order by the Bankruptcy Court approving the Assumption and Assignment . . . .
>
> For the purpose of claims arising under 11 U.S.C. §§ 544-551, all amounts owing by the Debtors to Almond shall be deemed paid in full. . . .
>
> The effectiveness of this Amendment [to the Supply Agreement] shall be contingent upon the entry of the Bankruptcy Court of an order approving the Assumption and Assignment pursuant to the terms of this Amendment [to the Supply Agreement].[6]

Days later, the Debtors filed the *Notice of Debtors' Entry Into Certain Cure Amount Agreements With Respect to Debtors' Intent to Assume and Assign Certain Leases and*

---

[6] *First Amendment to Supply Agreement* (attached as Exh. G to motion for summary judgment).

*Executory Contracts* ("Cure Agreement Notice"). [7]  The Cure Agreement Notice attaches

the Amendment to Supply Agreement with Almond and states as follows:

> PLEASE TAKE FURTHER NOTICE that, agreements
> (collectively, the "<u>Cure Amount Agreements</u>") have been
> entered into by and between the Debtors and the following
> non-Debtor counterparties (collectively, the "<u>Cure Amount
> Agreement Counterparties</u>") to certain Assumed and
> Assigned Contracts: [including] Almond Products, Inc. . . .
> The Cure Amount Agreements, copies of which are annexed
> hereto as Exhibit A, among other things, propose to resolve
> certain issues raised by the Cure Amount Agreement
> Counterparties with respect to the assumption and
> assignment of the respective Assumed and Assigned
> Contracts to which they are a party.[8]

The Debtors then filed a *Notice of Filing of Amendment to Asset Purchase Agreement*

("Notice of APA Amendment").[9]  The amendment attached to the Notice of APA

Amendment states:

> <u>Section 4: Amendment of Schedules to the Asset Purchase
> Agreement</u>.  Sellers and Purchaser hereby agree and
> acknowledge each of the updates to the Schedules to the
> Asset Purchase Agreement set forth in the Notice dated
> March 23, 2009 provided by Purchaser to Sellers attached
> hereto as <u>Exhibit A</u>. . . .

Exhibit A states:

> Pursuant to Section 2.1(c) of the Asset Purchase Agreement,
> Purchaser hereby makes the following revisions to Schedule
> 2.1(a)(v) (Assumed Executory Contracts):

---

[7] D.I. 234.

[8] *Id.*

[9] D.I. 240.

(a) The following two items are hereby added to Schedule 2.1(a)(v) under the heading "Assumed Contracts":

. . .

● Supply Agreement, dated April 2, 2008, between Almond Products, Inc. and Fluid Routing Solutions, Inc. (as amended by First Amendment to Supply Agreement, dated March 13, 2009, between Almond Products, Inc. and Fluid Routing Solutions, Inc.).

The exhibit also provides that the Almond Supplement Agreement is removed from the list of Excluded Assets and Contracts.

On March 26, 2009, the Court entered an order approving the sale of the Debtors' fuel systems business (the "Sale Order").[10]   The Sale Order provides:

Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and the Assumed Leases and the assignment of such agreements to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.[11]

The Sale Order continues:

Cure amount agreements (collectively, the "Cure Amount Agreements") have been entered into by and between the Debtors and the following non-Debtor counterparties (collectively, the "Cure Amount Agreement Counterparties") to certain Assumed Contracts: . . . Almond Products, Inc. . . . The Cure Amount Agreements, copies of which are annexed hereto as Exhibit 1, among other things, propose to resolve certain issued raised by the Cure Amount

---

[10]  D.I. 244.

[11]  Sale Order at ¶ 21.

Agreement Counterparties with respect to the assumption and assignment of the respective Assumed Contracts to which they are a party.[12]

After the Sale Order was entered, Almond received payment in the amount of $367,385.57, which satisfied its cure claim in accordance with the Amendment to Supply Agreement and the Sale Order.  Upon closing of the sale of the Debtors' assets, Almond and the Purchaser began performing under the Supply Agreement (as amended).

On October 2, 2009, the Court converted the Debtors' bankruptcy cases to chapter 7 and Alfred T. Giuliano was appointed as the chapter 7 trustee (the "Trustee") for the Debtors' estates.  In 2011, the Trustee sued Almond for recovery of $1,445,659.77, as preferences under sections 547 and 550 of the Bankruptcy Code.  In response, Almond filed its answer and affirmative defenses as well as this motion for summary judgment.

## LEGAL ANALYSIS

### A.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, directs that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[13]

---

[12] Sale Order at ¶ 31.

[13] Fed.R.Civ.P. 56.

When requesting summary judgment, the moving party must "put the ball in play, averring an absence of evidence to support the nonmoving party's case."[14]  The burden then shifts to the nonmovant to identify "some factual disagreement sufficient to deflect *brevis* disposition."[15]  Not every discrepancy in the proof, however, is enough to forestall a properly supported motion for summary judgment; the "disagreement must relate to some genuine issue of material fact."[16]  In other words, the summary judgment standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."[17]

In order to demonstrate the existence of a genuine issue of material fact in a jury trial, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant.[18]  The same principles apply in a bench trial where the judge is the ultimate trier of fact; the nonmovant must obviate an adequate showing to the judge to find for the nonmovant.[19]  At the summary judgment stage, the

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[15] *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

[16] *Id.*

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[18] *United States v. Jamas Day Care Ctr. Corp.*, 152 Fed.Appx. 171, 173 (3d Cir. 2005) (quoting *Olson v. GE Astrospace*, 101 F.3d 947, 950 (3d Cir. 1996) (citing *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993))). *See also Mesnick*, 950 F.2d at 822. ("... 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law").

[19] *Leonard v. General Motors Corp. (In re Headquarters Dodge)*, 13 F.3d 674, 679 (3d Cir. 1993) ("A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder [sic] could return a verdict in favor of the nonmovant."). *See also Matsushita Elec.*

court does not "weigh the evidence and determine the truth of the matter;" rather, the court determines "whether there is a genuine issue for trial."[20]  A material fact is one which "could alter the outcome" of the case.  It is genuine when it is "triable," that is, when reasonable minds could disagree on the result.[21]  Importantly, all reasonable inferences must be drawn in favor of the nonmoving party[22] and any doubt must be read in favor of the nonmovant.[23]

The requirement that the movant supply sufficient evidence carries a significant corollary: the burden of proof is switched to the non-movant who "must present definite, competent evidence to rebut the motion."[24]  Such evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial."[25]  Furthermore, evidence that "is merely colorable or is not significantly probative" cannot deter summary judgment.[26]  In response, "the non-moving party must adduce more

---

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial").

[20]  *Argus Mgmt. Group v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 214 (Bankr. D. Del. 2005) (quoting *Anderson*, 477 U.S. at 249).

[21]  *Id.* at 210 (citing *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 301 (3d Cir. 1995)).

[22]  *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004) (citing *Suders v. Easton*, 325 F.3d 432, 435 n.2 (3d Cir. 2003)).  *See also Interim Investors Comm. v. Jacoby*, 90 B.R. 777, 780 (W.D.N.C. 1988), *aff'd*, 914 F.2d 1491 (4th Cir. 1990); *In re Holzinger*, 89 B.R. 529, 530 (Bankr. E.D. Pa.1988); and *In re Pashi*, 88 B.R. 456, 457 (Bankr. N.D. Ga. 1988).

[23]  *In re Cantin*, 114 B.R. 339, 341 (Bankr. D. Mass. 1990); and *In re Dempster*, 59 B.R. 453, 455 (Bankr. M.D. Ga. 1984).

[24]  *Id. See also Mesnick*, 950 F.2d at 822.

[25]  *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

[26]  *Id. See also Anderson*, 477 U.S. at 249-50.

than a mere scintilla of evidence in its favor;"[27] it cannot simply reassert factually unsupported allegations contained in its pleadings.[28]  In other words, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[29]  Conversely, in a situation where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party.[30]

### B. There Are No Material Issues Of Fact Regarding The Preferential Transfer Claims.

The six requirements that a trustee must establish to make a preference voidable are: (1) a transfer is made; (2) on account of an antecedent debt; (3) to or for the benefit of the creditor; (4) while the debtor was insolvent; (5) within 90 days of the filing of the petition; (6) that left the creditor better off than it would have been if the transfer had not been made and it had asserted its claim in chapter 7 liquidation.[31]  "'Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b).'"[32]

---

[27]  *Id. See also In re CVEO Corp.*, 327 B.R. at 213.

[28]  *See, e.g., Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

[29]  *PTC v. Robert Wholey & Co. (In re Fleming Cos.)*, 2006 Bankr. LEXIS 896 at *3 (Bankr. D. Del. 2006) (citing *Matsushita Elec. Indus. Co.*, 478 US at 1356).

[30]  *Celotex Corp.*, 477 U.S. at 317.

[31]  11 U.S.C. § 547 (b).

[32]  *Argus Mgmt. Group v. J-Von N.A. (In re CVEO Corp.)*, 327 B.R. 724, 728 (Bankr. D. Del. 2005) (*quoting Waslow v. Interpublic Group of Cos. (In re M Group, Inc.)*, 308 B.R. 697, 700 (Bankr. D. Del. 2004)).

Almond argues that the Trustee has not established that, as a result of the payments, Almond is better off than it would be had the transfer not been made.[33] More specifically, Almond argues it is entitled to summary judgment because the allegedly preferential transfers were made pursuant to an executory contract that was assumed and assigned by the Debtors.

The Trustee responds that summary judgment should be denied because the Supply Contract was not actually assumed and assigned.  In support, the Trustee asserts that (i) the Debtors never amended the Notice of Assumption and Assignment, even though they agreed to do so; (ii) the Supply Contract was simply referred to as an "Assumed Contract" in a "Cure Amount Notice" that was served at 8:00 p.m. the night before the Sale Hearing and not under to the procedures established by the Court in the Bid Procedures Order; (iii) even if the Debtors had sought approval of the assumption and assignment of the Supply Contract, such approval would have been denied because the Supply Contract was not executory; and (iv) that Almond had fully performed on the non-executory contract by delivering goods to the Debtors.   Furthermore, the Trustee rather incredibly argues that:

> what is before this Court is a series of acts occurring after the after the Sale [sic] Hearing evidencing an attempt by Almond to obtain immunity from avoidance claims and to do so at the last minute in contravention of any notion of due process to the non-debtor parties.  Plain and simple, Almond side stepped the normal protocol to assume and assign contracts in 2009 in an attempt to immunize their notable exposure to receipt of preference transfers.  Their

---

[33] 11 U.S.C. §547 (b)(5)(c).

> dealings were not squarely before this Court in 2009, and
> they seek to similarly preclude the chapter 7 trustee from
> conducting discovery to expose what occurred. The conduct
> should not be condoned.[34]

Would it be that we were all so prescient.

Lastly, the Trustee argues, in the alternative, that the Court should postpone resolution of the Motion to allow the Trustee to conduct discovery to investigate (i) whether the Supply Agreement was, in fact, executory and (ii) the parties' agreement to treat the Supply Agreement as executory. The Trustee further asserts his right, to the extent that the Court finds the Almond Supply Contract was assumed and assigned, to seek rescission of any assumption order and to show that the assumption order was improperly obtained.[35] The Trustee loses on all counts.

> 1. *Applicable Law Regarding Pursuit of Preference Actions Against Counter-Parties to Assumed Executory Contracts.*

Under the Third Circuit's holding in *Kimmelman v. Port Authority of New York and New Jersey (In re Kiwi International Air Lines, Inc.)*("*Kiwi*") section 547(b)(5) cannot be satisfied if during the case an executory contract was assumed or assumed and assigned pursuant to a court order.[36] In *Kiwi*, the debtor made payments within ninety days prior to its bankruptcy filing to various creditors who were parties to executory contracts. During its chapter 11 case, the debtor obtained an order from the Bankruptcy Court authorizing it to sell substantially all of its assets. As part of the sale, the debtor

---

[34] Response would it be that we all have such presence to Motion for Summary Judgment at p. 3.

[35] Response at ¶49, n.8.

[36] *Kimmelman v. Port Authority of New York and New Jersey (In re Kiwi International Air Lines, Inc.)*, 344 F.3d 311, 323 (3d Cir. 2003) (hereafter referred to as "*Kiwi*").

also obtained court approval pursuant to § 365 to assume and assign executory contracts with various creditors.  Pursuant to § 365, the creditors that were counter-parties to the assigned contracts were entitled to receive as cure of the debtors' defaults under the contract payment for the unpaid pre-petition amounts owed by the debtor.  Moreover, "[e]ach of the defendants made concessions, including allowing the debtor to cure the defaults on the assumed agreements by paying less than the full amount owed."  Subsequently, a chapter 7 trustee was appointed and he filed preference complaints against the counter-parties to the assigned executory contracts.[37]  The defendants moved to dismiss the actions.  The Bankruptcy Court dismissed the motions and the dismissal was affirmed by the Third Circuit.

The Third Circuit's decision contemplated and compared what the creditor actually received versus what the creditor would receive under chapter 7 distribution procedures.  The Third Circuit held that "the payments to all three of the defendants here are not recoverable as preferences because, had the creditors not received the payments pre-petition, they would have received amounts reflecting those sums, in any event, when the Bankruptcy Court approved the cures of the assumed agreements."[38]

The question after *Kiwi* is whether the contract is executory and whether it was, in fact, assumed or assumed and assigned.[39]  If so, the transfer is not avoidable.  In

---

[37]  *Id.*

[38]  *Id.* at 321; *see also In re Zenith Industrial Corp.*, 319 B.R. 810, 815 (Bankr. D. Del. 2005) (citations omitted).

[39]  The Third Circuit has held that court approval is a prerequisite to a debtor's assumption of an executory contract.  *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1077 (3d Cir. 1992).

*Litigation Trust v. Alpha Analytical Labs (In re IT Group, Inc.)*("IT Group Inc.") this Court addressed that issue.[40]   The Court held that a contract was not assumed unless it is specifically listed on the list of assumed executory contracts in the purchase agreement, filed when the sale order was entered, and referred to in that sale order.

### 2.   *The Supply Agreement Was Assumed And Assigned.*

The Trustee argues that the Supply Agreement was not properly "assumed" because it was not listed in the Cure Notice (filed prior to the amendment to the Supply Agreement was agreed to by the parties).   The Trustee continues that Cure Amount Agreement cannot be construed as an approval of the assumption and assignment of the Supply Agreement because it only provided that (i) Almond's pre-petition claim would be paid in a certain amount and (ii) the Debtors would use their "best efforts" to obtain approval of the assumption and assignment of the Supply Agreement – and approval of these two provisions is not approval of the assumption and assignment of the Supply Agreement.   The Trustee also questions the timing of the Cure Amount Agreement (after the deadline to object to the assumption and assignment of contacts and only the evening before the Sale Hearing).   The Trustee continues that the Debtors failed to ask the Court for approval to assume and assign the Almond Supply Contracts and did not "point out" that they were treating the Cure Notice as a request for approval of the assumption and assignment of the Supply Agreement – therefore, nothing at the Sale Hearing can be construed as a request for approval of the

---

[40]   *Litigation Trust v. Alpha Analytical Labs (In re IT Group, Inc.)*, 331 B.R. 597, 604 (Bankr. D. Del. 2005) (hereinafter "*IT Group I*").

assumption and assignment of the Supply Agreement.    The Trustee concludes that

"including the . . . Supply [Agreement] in a letter that is attached to the Notice of

Amendment should have no more force and effect than including any other agreement

in any other letter – simply adding contracts that the Debtors wish had been assumed

and assigned does not constitute approval of this conduct."

Based upon the plain meaning of the documents and the facts construed in favor

of the Trustee, there is sufficient evidence entitling Almond to summary judgment. [41]    In

response, the Trustee has not submitted material facts sufficient to rebut Almond's case.

The record is replete with support of this conclusion.[42]

As to the Trustee's argument concerning notice of the assumption of the Almond

contract, the Court finds that Trustee misses his mark.    As stated in *In re IT Group, Inc.*,[43]

the list of assumed (and assigned) executory contracts is determined and specified by

the *successful* bidder[44] and is usually not determined until shortly before the sale

hearing.    In *In re IT Group*, subcontracts were listed on the debtors' cure notice with the

---

[41]  The "nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant. "*United States v. Jamas Day Care Ctr. Corp.*, 152 Fed.Appx. 171, 173 (3d Cir. 2005) (citations omitted).  The same principles apply in a bench trial where the judge is the ultimate trier of fact; the nonmovant must obviate an adequate showing to the judge to find for the nonmovant. *Leonard v. General Motors Corp. (In re Headquarters Dodge)*, 13 F.3d 674, 679 (3d Cir. 1993).

[42]  *See* pp. 3-8, *supra.*

[43]  *IT Group I*, 331 B.R. 597 (Bankr. D. Del. 2005).

[44]  *Id.* at 603 ("Ultimately, however, it was up to Shaw, as the successful bidder, to determine and specify which contracts, and/or subcontracts, it wanted assumed and formally assigned to it and which it did not. Reflective of Shaw's decisions in this regard, therefore, Schedule 3.17, attached to the APA when Shaw filed it on March 26, and attached to it when the Sale Order was entered, included only prime contracts, and all or virtually all subcontracts which had been assembled on the earlier list noticed by Debtors were omitted.").

proposed cure amount; however, the subcontracts were not on the list of assumed contracts filed by the purchaser and attached to the sale order.[45]   The subcontract counter-parties moved to compel the debtor to comply with the sale order claiming that the debtors had assumed and assigned the subcontracts.   The Bankruptcy Court held that the subcontracts had not been assumed.[46]   Thereafter, the subcontract-counterparties were sued for preference recovery.   The subcontract-counterparties, now defendants, asserted *Kiwi* defenses by asserting that the subcontracts were integral parts of other assumed executory contracts.   The Bankruptcy Court held that these subcontractor counterparties could not assert the *Kiwi* defense unless they were specifically listed on the list of assumed contracts, filed when the sale order was entered and referred to in the sale order.[47]

Here, Almond was not on the initial list of contracts to be assumed, but Almond was specifically listed in a notice, their agreement was attached to the sale order, and they were specifically listed in the list of contracts to be assumed and assigned included in the amendments to the asset purchase agreement.[48]   The initial list of contracts to be potentially assumed and assigned is fluid until the Court approves the sale order.[49]   As such, a debtor filing a cure notice does not implicate that the debtor put *all* of its

---

[45]  *In re IT Group, Inc.*, 322 B.R. 729 (Bankr. D. Del. 2005) (hereinafter "*IT Group II*"); *see also IT Group I*, 331 B.R. at 602-03.

[46]  *IT Group II*, 322 B.R. at 736; *see also IT Group I*, 331 B.R. at 603.

[47]  *IT Group II*, 322 B.R. at 734-35; *see also IT Group II*, 331 B.R. at 603.

[48]  *See* D.I. 240.

[49]  *IT Group II*, 322 B.R. at 734-35; *see also IT Group I*, 331 B.R. at 603.

executory contracts on such list; nor does it indicate that the full list of contracts will, in fact, be assumed and assigned. A cure notice is designed to give notice to counter-parties to those contracts of the potential for assumption and assignment and to give notice of the debtors' proposed cure amount. The plaintiff has not set forth any material facts to the contrary.

The Trustee attempts to distinguish the facts in this case to those presented in *Kiwi*. In *Kiwi*, the debtors, the purchaser, the creditors committee, and a creditor entered into a compromise after numerous days of hearings.[50] Consistent with this compromise, the court entered a consent order approving the settlement as well as the sale order. The sale transaction included the assumption and assignment of certain contracts and leases which allowed the debtors' business to be sold as a going concern. Furthermore, "[a]s a prerequisite to the assumption and assignment of the various agreements, the Bankruptcy Court ordered [the purchaser] to cure [the debtors'] existing monetary defaults under the agreements and to provide adequate assurance of future performance under the agreements."[51]

However, upon examination, similar facts are present in this case. Here, Almond states that negotiation occurred between Almond and the Debtors for approximately one month.[52] As a result of these negotiations, the Debtors and Almond entered into

---

[50] *Kiwi*, 344 F.3d at 314.

[51] *Id.*

[52] *Amended Affidavit of Joy Ponce In Support of Motion of Almond Products, Inc. for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056* at ¶ 7 (Adv. D.I. 11) (hereinafter, the "Ponce Affidavit"). The Trustee has moved to strike this portion of the Ponce Affidavit. *See* Adv. D.I. 16. The Trustee argues that as Almond is moving for summary judgment on the fact that the Supply Agreement was assumed and that such

the Amendment to the Supply Agreement.[53]   The only difference from *Kiwi* is that the

negotiations were completed prior to any hearing.   As in *Kiwi*, the sale of assets was for

a going concern business, which included various contracts that were assumed and

assigned.   Furthermore, the Sale Order expressly references that the Almond "Cure

Amount Agreement" (i.e. the Amendment to the Supply Agreement) is an "Assumed

Contract" which the Court declared binding and in full force and effect, subject to the

cure payments.[54]   The Trustee further attempts to distinguish *Kiwi* by arguing that *Kiwi*

was an approval of a settlement; however, upon examination, the facts set forth in the

pleadings in this case indicate that a settlement was reached between the parties and the

Court approved the settlement in the Sale Order.   As a result, the Court finds that the

Trustee's distinctions are immaterial.

As detailed above, the Court finds that the Supply Agreement was assumed and

assigned by the Debtors.

### 3.   The Supply Agreement Is Executory.

The Third Circuit has adopted the Countrymen definition of an executory

contract as a contract under which the obligation of both the debtor and the other party

---

ruling is unambiguous, then Almond should not be able to reply on extrinsic evidence such as this statement while denying the Trustee the ability to conduct discovery.  Although, this statement in the Ponce Affidavit is extrinsic evidence, whether the Debtors and Almond negotiated for 5 minutes or one month is of no consequence – the fact of the matter is that some negotiations happened which led to the Amendment to the Supply Agreement which was appended to the Sale Order and approved therein. Based on the terms of the Amendment to the Supply Agreement, the Debtors, Almond and the Purchaser agreed to a cure amount, payment thereof, and to assume and assign, among other things, the Supply Agreement, as amended.

[53] *Id.*

[54] Sale Order, ¶¶ 21-22 and 31.

to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.[55]

The Trustee asserts that the Supply Contract was not executory because Almond had substantially performed its obligations under the Supply Agreement by supplying products to the Debtors.  The Trustee continues that Almond had "no obligation to continue providing product after it had not been paid."[56]

Under the Supply Agreement, Almond has agreed to supply parts to the Debtors based on the requirements of the Debtors, and the Debtors have agreed to buy the parts required, at a rate specified in the Supply Contract until February 28, 2013.[57]  The Trustee has presented no issue of material fact to evidence that Almond had substantially performed all of its duties under the requirements contract; in fact, the Supply Agreement evidences an on-going requirement for supply and purchase of parts.

Furthermore, the Trustee is estopped from arguing that the Supply Agreement is not executory.  In *Superior Toy & Manufacturing Co.,*[58] the debtor ("Superior Toy") held an exclusive license from the defendant ("Playtex") to distribute a line of trademarked toys throughout North America and assumed that licensing agreement under section 365.  For the next two years, Superior Toy was the exclusive licensee under the license.

---

[55] *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 39 (3d Cir. 1989) (internal quotations and citations omitted).

[56] Response at ¶ 41.

[57] Supply Agreements at §§1, 4 and 5.  *See Sharon Steel Corp.,* 872 F.2d at 39.

[58] 78 F.3d 1169 (7th Cir. 1996).

Thereafter, a trustee appointed for Superior Toy commenced a preference action claiming that pre-bankruptcy payments made by Superior Toy to Playtex under the license constituted preferences.  Predictably, the bankruptcy, district, and appellate courts rejected the Superior Toy trustee's contention that a debtor can assume a contract, enjoy its benefits, and then compel return of the pre-petition payments the debtor made under the contract.  As the Debtors in this case assumed the Supply Agreement with the Court's approval and the assumption and assignment of the Supply Agreement was some portion of the sale consideration to the Purchaser (which provided a benefit to the estate), the Trustee's argument that the Supply Agreement is not executory is barred by the doctrine of estoppel.[59]

The Court finds that the Supply Agreement is an executory contract and that the Trustee is estopped from asserting a contention to the contrary.

---

[59]  *Superior Toy*, 78 F.3d at 1176 ("Finally, Steege alleges that the bankruptcy court erred in entering the assumption order because the licensing agreement is not an executory contract. The district court held that Steege's argument is barred by the doctrine of estoppel. We agree. The trustee's predecessor assumed the license agreement with court approval. Playtex honored the contract, and allowed Superior Toy to retain an exclusive license. The bankruptcy estate benefitted from the contract for almost two years. The trustee cannot now come forward and argue that the contract is not executory and that the payments to Playtex should be returned. To hold otherwise, without some allegation of improper conduct by the parties, would be unfairly prejudicial to Playtex.").  *See also Philip Servs. Corp. v. Luntz (In re Philip Servs. (Delaware), Inc.)*, 284 B.R. 541, 553 (Bankr.D.Del.2002) ("[W]e conclude that once an executory contract is assumed, the trustee or debtor may not maintain a preference action to recover payments made prepetition pursuant to that contract."), *aff'd*, 303 B.R. 574 (D.Del.2003); *In re Ionoshere Clubs, Inc.*, 85 F.3d 992, 1000 (2nd Cir. 1996); *Seidle v. GATX Leasing Corp.*, 778 F.2d 659 (11th Cir. 1985) (after parties entered into a court-approved stipulation pursuant to 11 U.S.C. § 1110, which permits debtor-in-possession to retain possession of equipment by curing defaults and making the required payments, trustee is precluded as a matter of law from bringing a preference suit under § 547 to recapture prepetition contract payments); *Lewis Industries v. Barham Construction Inc.*, 878 F.2d 1230, 1231 (9th Cir. 1989) (where bankruptcy court has entered an order granting debtor's petition to assume a contract, debtor is estopped from later claiming a breach of which it knew but which it failed to raise at the assumption hearing); *In re J.F. Hink & Son*, 815 F.2d 1314, 1318 (9th Cir. 1987) (where lessor represented to the debtor and the court that he consented to the terms of a lease, and thus "induced reliance by the other principal parties and by the court itself," lessor was estopped to "deny that he accepted all the terms").

### 4. *Almond's Refusal To Sign A Critical Vendor Agreement Does Not Implicate Nefarious Intent To Avoid Preference Liability.*

Included in the Debtors' first day relief motions was a motion to pay critical vendor claims,[60] which the Court granted.[61]  The critical vendor order provided that the Debtors would submit "Trade Agreements" to critical vendors under which the pre-petition debt to the vendor would be paid so deliveries from those vendors would continue.  The order authorizing this procedure provided that "the execution of a Trade Agreement by the Debtors shall not be declared a waiver of any other cause of action, including avoidance actions, that may be held by the Debtors."[62]

The Debtors requested that Almond enter into a Trade Agreement.  Almond declined.  The Trustee argues that, as a result of such conduct, the Debtors believed Almond to be a critical vendor rather than a counterparty to an executory contract.  Whether a "critical trade vendor" is a vendor, supplier, liscensor, landlord, subcontractor, counter-party to an executory contract, etc., etc. is irrelevant.  The basis and point of a critical trade order is to give a debtor authorization to pay pre-petition services or goods when necessary to preserve the debtor's estate.  Indeed, one of the primary bases for issuing the relief is to avoid having to inquire or to litigate the details of the relationship of the parties, e.g. executory contract or supply agreement, because there is <u>no time</u> to do so.

---

[60] D.I. 13.

[61] D.I. 20.

[62] *Order Authorizing the Debtors to Elevate Certain Prepetition Claims of Certain Critical Vendors to Administrative priority* (D.I. 20), at p. 3.

Furthermore, as is generally the case, there is no requirement that a vendor accept critical vendor status of a Trade Agreement offered by a debtor.[63]  Indeed, such a requirement would be well beyond the power of this court.  Debtors only have so many entitlements.  At most, the order in this case <u>allows</u> (not requires) the Debtors, in their discretion, to elevate a prepetition claim to an administrative priority claim and in doing so to use their best efforts to have those vendors enter into Trade Agreements. Nothing in the order requires a vendor to agree to the Trade Agreement or to consent to such treatment.  The Trustee has presented no issue of material fact regarding an intent, nefarious or otherwise, in Almond's refusal to enter into a Trade Agreement or to accept critical vendor payment.

> **5. As The Supply Agreement Is Executory And Was Assumed And Assigned, The Court Declines To Allow Discovery So That The Trustee May Pursue Alternative Theories In Order To Set Aside Any Portion Of The Sale Order.**

The Trustee asserts that summary judgment is premature and the Trustee should be granted time to conduct discovery in order to collect the facts essential to justify its opposition.  The Trustee points to (alleged) contradictions in the record and the lack of documentation relating to the period of negotiations before the Sale Hearing between Almond and the Debtors.  The Trustee, somewhat indirectly, seeks discovery in order to set aside any order that purports to approve the assumption and assignment of the

---

[63]  *See, e.g., In re Zenith Industrial Corp.*, 319 B.R. 810, 815 (Bankr. D. Del. 2005) ("Zenith sought and received, through the Essential Vendor Order, the right, not the obligation, to pay certain discrete pre-petition claims at Zenith's own discretion.").

Supply Agreement due to (alleged) inequitable conduct of the Debtors, the Purchaser and Almond.

The Trustee's request is specifically addressed in *Superior Toy*.

> [The plaintiff] has not petitioned the bankruptcy court to set aside its assumption order. Nor has [plaintiff] claimed that either [the Debtor] misled the bankruptcy court. Rather, she asks us to remand this case for an evidentiary hearing to determine whether the bankruptcy court would have entered the assumption order had it known about the $46,063.30. Even assuming the court was misled, a § 547(b) preference suit is not the proper means to address the error.[64]

Upon review of the docket, the Trustee has not filed a motion to amend or rescind the Sale Order.  As such, the procedural posture is the death knell of this request.

Furthermore, as the Court finds that the Supply Agreement was assumed (and assigned) in the Sale Order under the express terms of the Sale Order[65] and Asset Purchase Agreement,[66] the Court highly doubts the Trustee could successfully bring a motion to amend or rescind the Sale Order.[67]

---

[64] *Superior Toy*, 78 F.3d at 1175 -1176.

[65] Sale Order at ¶ 45 ("Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.").

[66] Asset Purchase Agreement at ¶ 13.9 ( "Sellers hereby agree that . . . the terms of this Agreement shall be binding upon any subsequent trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code.").

[67] *In re Teligent, Inc.*, 326 B.R. 219, 226 (S.D.N.Y. 2005) (Teligent's knowledge and conduct in prosecuting the Assumption Motion is properly imputed to the Representative, and the Representative cannot vacate an order that was entered at the request of the Representative's predecessor-in-interest.); *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d Cir. 1996) ("[T]he bankruptcy court's earlier decision to let Klein Sleep assume the unexpired lease-a decision that was not appealed-precluded a subsequent finding that assuming the lease did not benefit Klein Sleep. That decision required a judicial finding-up-front-that it was in the best interests of the estate (and the unsecured creditors) for the debtor to assume the lease,

## CONCLUSION

As stated above, the Court find that the Supply Agreement, as amended, is an executory contract and was assumed by the Debtors and assigned to the Purchaser.  The Court hereby grants Almond's motion for summary judgment.  Furthermore, the Court denies the Trustee's request for discovery and any attempt in this adversary proceeding to set-aside the Sale Order.  An order will be issued.

---

pursuant to 11 U.S.C. § 365(a). It is the same kind of finding that the bankruptcy court is required to make with regard to all new contracts entered into by the trustee without prior court approval during the administration of the estate in order for those contracts to qualify for priority pursuant to § 503(b)."); *Paul v. Monts,* 906 F.2d 1468, 1473 (10th Cir. 1990) ("The trustee, as successor to the debtor in possession, is bound by his predecessor's authorized actions."); *In re Buzzworm, Inc.,* 178 B.R. 503, 508 (Bankr. D.Colo. 1994); *Armstrong v. Norwest Bank, Minneapolis, N.A.,* 964 F.2d 797, 801 (8th Cir. 1992) ("First, it is axiomatic that the Trustee is bound by the acts of the debtor-in-possession, Trout, in entering into the three stipulations. It is equally self-evident that the Trustee is bound by the decisions of the courts regarding the stipulations, even absent his presence at those proceedings.  We cannot entertain any suggestion to the contrary, as the result would be chaos among debtors-in-possession and their creditors.  Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee."); *In re Philadelphia Athletic Club, Inc.,* 17 B.R. 345, 347 (Bankr. E.D. Pa. 1982) (Judge Goldhaber found that the trustee was indeed bound because (i) the stipulation had expressly provided that it was binding on "successors and assigns" and (ii) "[t]o hold that such a stipulation is not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession … [a result which is] inconsistent with the purpose of Chapter 11 of the Code to allow the debtor in possession to conduct its business and formulate a successful plan of reorganization if possible.").